WHITNEY A. DAVIS, SBN 149523
**WHITNEY A. DAVIS, Attorney at Law**
420 Throckmorton Street, Suite 200
Fort Worth, Texas 76102
. . .
641 Fulton Avenue, Suite 200,
Sacramento, CA 95825
(877)251-6087

Attorneys for Plaintiffs
Tommy Piluyev and Liudmila Maftey

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| TOMMY PILUYEV; LIUDMILA MAFTEY,<br><br>     Plaintiffs,<br><br>          v.<br><br>STARBUCKS CORPORATION; PACTIV PACKAGING, INC.,<br><br>     Defendants. | **Civil Case No.: 2:20-at-885**<br><br>PLAINTIFFS' COMPLAINT FOR:<br><br>NEGLIGENCE;<br>STRICT PRODUCT LIABILTY (Design Defect (Risk/Benefit & Consumer Expectation);<br>STRICT PRODUCTS LIABILTY (Manufacturing Defect);<br>STRICT PRODUCTS LIABILTY (Failure to Warn);<br>LOSS OF CONSORTIUM;<br>VICARIOUS LIABILITY<br><br>DEMAND FOR JURY TRIAL |

Plaintiffs TOMMY PILUYEV and LIUDMILA MAFTEY complain of Defendants STARBUCKS CORPORATION (hereinafter referred to as "STARBUCKS") and PACTIV PACKAGING, INC. (hereinafter referred to as "PACTIV") and where STARBUCKS AND PACTIV are collectively referred to as

"Defendants"), for the claims stated herein in an amount in excess of $75,000, and allege:

## I.

## JURISDICTIONAL ALLEGATIONS

1. This district court has jurisdiction over the present matter pursuant to 28 U.S.C. Section 1332(a)(1) because Plaintiffs were residents of the State of California at the time of the incident; Defendant STARBUCKS is a Washington Corporation which upon information and belief is domiciled and doing business from its headquarters in Seattle, Washington; and Defendant PACTIV is a Delaware corporation which upon information and belief is domiciled and doing business from its headquarters in Lake Forest, Illinois.

2. This U.S. District Court enjoys personal jurisdiction over Defendant STARBUCKS and PACTIV because those companies have purposefully availed themselves of the benefits and protections of the laws of the State of California and of the United States by doing business in the Eastern District.

3. Venue is proper in the Northern District pursuant to 28 U.S.C. section 1391(b)(2) because the incident alleged herein took place in the Eastern District on the premises of a STARBUCKS store supplied with components manufactured by PACTIV.

4. Plaintiffs do not know the names, identities or domicile of the following potential parties who may be subsequently joined in this matter when their identity is discovered: a. the STARBUCKS Associate that served the Plaintiffs at the drive-through by which STARBUCKS may be held responsible through *respondeat superior*; b. the cup manufacturer; c. the contract designers of the beverage system components; d. the manufacturers and service-providers for the beverage system manufacturing equipment; and e. beverage component distributors, all of whom served either as agents or contractors of the Defendants. Plaintiff will timely seek amendment to this complaint upon the discovery of their respective identities.

5. Each Defendant was at all times herein mentioned acting within the course and scope of their employment, alter-ego status, commonly-controlled enterprise status, parent-controlled subsidiary status, joint-venturer status, employee status, contractor status, vendor status and/or agency status with each other named or subsequently-joined Defendant.

## II.
## COMMON ALLEGATIONS

6. Plaintiffs incorporate by this reference the allegations of the preceding paragraphs as though fully set forth herein.

7. Plaintiff Tommy Piluyev was a 22 year-old married father of a nine month old child on the date of the incident, October 5, 2018, and was married to Plaintiff Liudmila Maftey before the accident. Mr. Piluyev was an

accomplished pianist who also owned and ran his own third-party logistics brokerage.

8.    Mr. Piluyev suffered severe burns and life-long disfigurement after the STARBUCKS drive-through window associate spilled tea on him at Starbucks Store 6710 in Roseville, California at approximately 9:52 pm on October 5, 2018.

9.    Starbucks Store 6710 has been drive-through capable since it was established in a strip center on Cirby Way in Roseville in 2003. Drive-through customers enter a narrow alley behind the strip center to place their order. The lane wends around the strip center to where customers pay for, and receive, their order at the drive-through window.

10.    Upon information and belief, STARBUCKS contracted with unknown entities prior to the subject accident to design, test and provide specifications for hot beverage cups, lids, sleeves and other related service products, which were to be used by STARBUCKS associates and consumers without inspection for defects. STARBUCKS issues approved production specifications to vendors who produce hot beverage cups, lids, sleeves and other related service products for use in their stores, which were to be used by STARBUCKS associates and consumers without inspection for defects.  Upon information and belief, at some point in the three years prior to the subject accident, STARBUCKS changed the specifications for hot beverage cups and lids as well

as the vendors for each. The hot beverage cup vendors prior to the accident and at the time of the accident are not currently known by the Plaintiffs.

11.     Upon information and belief, the hot beverage lids and cups were originally designed and specified to be made of materials resistant to heat-degradation, configured to create a uniform seal with the specifically-configured lip of the hot beverage cup, and in a manner specified to minimize cup deflection during handling which would otherwise unseat the lid from its sealed state.

12.     Upon information and belief, STARBUCKS hot coffee drinks are served to consumers at approximately 130 degrees F. for children and 150 degrees F. for adults. Upon information and belief, water used for tea drinks exits the heating urn at 195-205 degrees F., which in the instance of a Honey Citrus Mint Tea order, is released from the urn over two sets of tea bags resting in the cup bottom with the two tea bag strings draped over the lip of the cup. The cup is supposed to be sleeved prior to filling. The cup is then lidded and served as soon as possible at temperatures ranging from 190-205 degrees F. Upon information and belief, the strings of the tea bags immersed in STARBUCKS hot tea drinks wick hot tea out of the lid and outside the cup. STARBUCKS uses the same cups and lids for serving hot tea drinks and hot coffee drinks.

13.     On the evening in question Mr. Piluyev was driving home with his

family in their 2018 BMW SUV X6 when they stopped at Starbucks to pick-up two grande size Honey Citrus Mint Teas. Mrs. Piluyev was seated in the passenger seat, and their child was secured in a car seat in the back seat. While Mr. Piluyev made his way to the pick-up window after ordering, the female Starbucks associate was acting within the course and scope of her employment with STARBUCKS in that she prepared the teas by pouring hot water from the tea-water dispenser into two sleeved cups containing two tea bags each. The same STARBUCKS associate lidded the tea drinks. When Mr. Piluyev arrived at the drive-through window, the same STARBUCKS associate handed the first lidded and sleeved cup of tea to Mr. Piluyev, which he placed into the SUV's cup holder.

14.     As the window associate reached to the SUV's window sill to deliver the second sleeved and lidded cup to Mr. Piluyev, the lid lost its seal with the cup lip and dislodged from the top of the cup. Hot tea spilled on Mr. Piluyev's left hand during the transfer, the cup overturned on the window sill and hot tea poured onto Mr. Piluyev's hands, stomach and pelvic area.

15.     Covered in scalding tea, and unable to open his door to escape because he was near the drive-through window, Mr. Piluyev quickly put the SUV into gear and accelerated from the window. He pulled into an adjacent parking lot, hastily exited the vehicle stripped off his sweat pants.

16.     Mr. Piluyev reported to the Emergency Department at Sutter Roseville

Hospital after the incident.  The emergency team reported partial-thickness burns with blistering across the lower left abdomen, thighs, penis, scrotum, peritoneum and buttocks. Nine of his fingers were also burned to at least the second degree, left more than right.  Total body surface burn area was estimated at 6 to 8%." The emergency team stabilized Mr. Piluyev, consulted with UC Davis' burn center staff, and transferred him by ambulance to UC Davis.  He would then spend eleven (11) more days receiving care from the UC Davis burn unit professionals.

17.    UC Davis admitted Mr. Piluyev to the UC Davis' E7 Acute Care Unit on October  6th.  The staff confirmed that he suffered 8% Total Body Surface Area 2nd degree burns to the areas identified by Sutter Roseville. He required intravenous pain control along with intensive and invasive wound care.

18.    After admission, Mr. Piluyev underwent constant wound debridement with intravenous pain medications after each dressing change.  Mr. Piluyev could not use his hands or fingers for any purpose, including personal care. He became entirely dependent on the medical staff. Upon discharge, Mr. Piluyev's wife performed her husband's wound and personal care.  Mr. Piluyev transitioned from IV narcotics to gabapentin, oxycodone, Tylenol and ibuprofen.

19.    In the five months post-discharge Mr. Piluyev gradually regained the ability to walk, the ability to sense touch in some of his fingers, the ability to hold his young child, and eventually, to use a computer keyboard. Mr. Piluyev

remained unable to play the piano. The sensitivity and permanent skin discoloration and disfigurement of Mr. Piluyev's genitals and inner thighs made eventual intimacy awkward and painful.

III.

CAUSES OF ACTION

NEGLIGENCE

(Against All Defendants)

20.    Plaintiffs incorporate by this reference all preceding paragraphs as if fully set forth herein.

21.    Defendants, including each unknown and as yet unidentified tortfeasor (hereinafter collectively referred to as "Defendants") owed a duty to Plaintiffs to test, design, re-design, manufacture, inspect, recall, store, break-bulk, distribute and deploy the hot beverage container system components (i.e. lids, cups, tea bags, sleeve) for the grande Honey Citrus Mint Tea beverage in a manner that was safe for preparation at temperatures exceeding 180 degrees F., and which was likewise safe for the use and/or foreseeable misuse by drive-through customers.

22.    Premises Safety Procedures & Design: Defendant Starbucks, which undertook a corporate initiative to increase customer through-put in its drive-through restaurants also owed a duty to Plaintiffs to test, design, re-design, manufacture, inspect, install, adopt best practices and procedures, deploy the

drive-through window serving area and related appurtenances and fixtures in a manner which permitted its beverage container system (i.e. lids, cups, tea bags, sleeve) to be safely delivered to customers.

23.   <u>Study, Training and Execution</u>: Due to the scalding temperatures of the dual tea beverages, Defendants each owed a heightened duty to customers to study the use of fixtures and storage equipment to minimize handling damage, to train their employees properly in the shipping, unpacking, stacking and loading of restaurant receptacles, and to train Starbucks employees in affixing beverage lids and delivering dual bag tea beverages safely to drive-through customers in defect-free container systems.

24.   Defendants breached their respective duties of reasonable care to the Plaintiffs by failing to discharge the duties set forth above. Defendants knew or should have known that the breach of the duties, and failure to address the risk of harm, was unreasonable and constituted negligence. Defendants' breach of their respective duties was a substantial factor in causing the Plaintiffs to suffer personal injury and property damage, to incur medical expenses and to suffer general damages in an amount according to proof in excess of $75,000.

25.   Upon information and belief, Defendants had knowledge of no less than Eighty (80) lid-off incidents per day involving customers; Defendants had knowledge of additional complaints and burn incidents from employees, managers and associates concerning defective cups and lids; Defendants had

knowledge of the defective lids and lid fit issues involving double tea beverages with sufficient notice to create an alternative safe design, reduce defective lid production and/or to deploy procedural practice change prior to the present incident.

26.  With the knowledge of prior incidents occurring daily with the hot teas, Defendants STARBUCKS and PACTIV acted or failed to act by failing to research, analyze and deploy a reasonably safe alternative solution. Defendants' acts or failures to act were an extreme departure from the ordinary standard of conduct such that their conduct arose to the level of gross negligence.

27. Further, or alternatively, the conduct alleged above by Defendants STARBUCKS and PACTIV constituted despicable conduct carried on by the Defendants in conscious disregard of the rights and safety of the Plaintiffs.  Accordingly, Plaintiffs and the State of California are entitled to an objectively reasonable award of exemplary damages against STARBUCKS and PACTIV to incentivize deployment of a safe solution, and to disincentivize further despicable conduct by making burn claims unaffordable as a cost of doing business.

### STRICT PRODUCT LIABILITY
(Manufacturing Defect - Against PACTIV and Manufacturing Defendants)

28.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

29.     Pursuant to standards designs and specifications, the Manufacturing Defendants manufactured hot beverage cups, lids and sleeves as components to a hot beverage container system to be used by STARBUCKS in delivering its beverages to Plaintiffs and consumers, whom were all expected to use or foreseeably misuse the hot beverage container system without inspection for defects.

30.     Upon information and belief, the hot beverage container system components contained manufacturing defects when they left the possession of the Manufacturing Defendants in that: a) the lid was manufactured out of tolerance or standard in such a manner to prevent the lid recess from forming and sealing to the lip of the cup in the fashion intended by the manufacturer; and b) the lid and the cup were manufactured of materials that deformed under the increased heat of STARBUCKS' dual tea beverage before it could be safely transferred to the Plaintiffs, and in such a manner that the tea bag strings would prevent the lip/cup seal from occurring.

31.     Plaintiffs were harmed while using or foreseeably misusing the defective beverage container.

32.     The defect in the beverage container system was a substantial factor in causing Plaintiffs' harm.

33.     Upon information and belief, Defendants had knowledge of no less than Eighty (80) lid-off incidents per day involving customers; Defendants had knowledge of additional complaints and burn incidents from employees, managers and associates concerning defective cups and lids; Defendants had knowledge of the

defective lids and lid fit issues involving double tea beverages with sufficient notice to create an alternative safe design, reduce defective lid production and/or to deploy procedural practice change prior to the present incident. Accordingly, the conduct of Defendants STARBUCKS and PACTIV in failing to research, analyze and deploy a reasonably safe alternative solution constituted despicable conduct carried on by the Defendants in conscious disregard of the rights and safety of the Plaintiffs. Accordingly, Plaintiffs and the State of California are entitled to an objectively reasonable award of exemplary damages against STARBUCKS and PACTIV to incentivize deployment of a safe solution, and to disincentivize further despicable conduct by making burn claims unaffordable as a cost of doing business.

### STRICT PRODUCT LIABILITY
(Design Defect – Consumer Expectation Test
Against All Defendants)

34.    Plaintiffs incorporate by this reference all preceding paragraphs as if fully set forth herein.

35.    The Defendants manufactured, sold or distributed hot beverage cups, lids and sleeves as components to a hot beverage container system to be used by STARBUCKS in delivering its beverages to Plaintiffs and consumers, whom were all expected to use or foreseeably misuse the hot beverage container system without inspection for defects.

36.    The Defendants used the same hot beverage container system to deliver the finished product – a container system filled with a hot beverage where a lid recess fit to the cup lip in a manner that effectively sealed the hot liquid in the

container.  Consumers, and Plaintiffs herein, expected the lids to remain in place while consuming the hot beverages, and expected the lids to be removable and subject to re-seating if they wanted to add cream or other liquids to the beverage. STARBUCKS knew, and expected that Consumers, and Plaintiffs herein, would rely on the seal in the reasonable handling and drinking of hot STARBUCKS beverages.

37.    The Defendants knew that STARBUCKS would use the hot beverage container system to deliver hot beverage products of varying temperatures ranging from 120 degrees F. to more than 200 degrees F. if a tea beverage was being delivered. The Defendants designed and sold the beverage containers as a part of STARBUCKS' finished product line, with full knowledge that STARBUCKS intended to, and did, serve hot tea products to customers with one or more tea bag strings draped over the cup lip when the cup was being lidded by a STARBUCKS associate or barista.

38.    Upon information and belief, through the use and foreseeable misuse experience of STARBUCKS employees, STARBUCKS customers and product researchers,  STARBUCKS and the component manufacturers learned that the tea bag strings wick hot liquid through the string, through the cup/lip seal, and out of the cup.  STARBUCKS tea drinks would drip such that the tea tag (at the end of the tea string) would sometimes be tucked into the cup sleeve by associates to reduce the flow of hot tea liquid from the tea lid and onto customers' hands.

39.    Upon information and belief, the tea bag strings in their dry state, and to a greater extent in their wet and swollen state, interfered with the lip/cup seal of

the hot beverage container by either preventing the seal as an obstruction (especially when the two strings were wound together), or acting to deform the heated and pliable lid in two places so that a seal would not occur or degrade (especially where the strings were lain over two different areas of the lip.  When combined with foreseeable cup deflection from associate grasping and handling the hot tea beverage prior to delivery to the customer, the lack of the lip/cup seal made the lid unstable and not affixed to the cup as originally designed and expected for non-tea hot beverage products.

40.    STARBUCKS had notice prior to the present matter of the consequences of serving the hotter double tea beverages with tea bag strings in the same container system STARBUCKS used for serving the less hot beverages without lid seating obstructions – cup and lid deformation resulting in "lid-off" spill accidents during handling.

41.    The component parts of the STARBUCKS dual tea beverage container system, and the finished dual tea product as a whole, did not perform as safely as an ordinary consumer would have expected it to perform when used or foreseeably misused in an intended or reasonably foreseeable manner.

42.    During reasonably foreseeable handling by the STARBUCKS associate and later as the dual tea beverage was being passed to Plaintiff Tommy Piluyev, the lid either never obtained or lost its seat on the cup lip.  The lid of the dual tea beverage dislodged during passing and spilled hot tea on Mr. Piluyev. He suffered the severe burns as alleged herein.

43.    The failure of the dual tea beverage product as a whole, and/or the failure of its component parts, to perform safely was a substantial factor in causing Plaintiffs' harm.

44.    Upon information and belief, Defendants had knowledge of no less than Eighty (80) lid-off incidents per day involving customers; Defendants had knowledge of additional complaints and burn incidents from employees, managers and associates concerning defective cups and lids; Defendants had knowledge of the defective lids and lid fit issues involving double tea beverages with sufficient notice to create an alternative safe design, reduce defective lid production and/or to deploy procedural practice change prior to the present incident.  Accordingly, the conduct of Defendants STARBUCKS and PACTIV in failing to research, analyze and deploy a reasonably safe alternative solution constituted despicable conduct carried on by the Defendants in conscious disregard of the rights and safety of the Plaintiffs. Accordingly, Plaintiffs and the State of California are entitled to an objectively reasonable award of exemplary damages against STARBUCKS and PACTIV to incentivize deployment of a safe solution, and to disincentivize further despicable conduct by making burn claims unaffordable as a cost of doing business.

STRICT PRODUCT LIABILITY

(Design Defect – Risk/Benefit Test

Against All Defendants)

45.    Plaintiffs incorporate by this reference all preceding paragraphs as if fully set forth herein.

46.    The Defendants manufactured, sold or distributed hot beverage cups, lids and sleeves as components to a hot beverage container system to be used by STARBUCKS in delivering its beverages to Plaintiffs and consumers, whom were all expected to use or foreseeably misuse the hot beverage container system without inspection for defects.

47.    The Defendants used the same hot beverage container system to deliver the finished product – a container system filled with a hot beverage where a lid recess fits to the cup lip in a manner that effectively sealed the hot liquid in the container.    The Defendants intended the lids to remain in place while users consumed the hot beverages, and expected the lids to be removable and subject to effective re-seating if the customer wanted to add cream or flavorings to the beverage.

48.    The Defendants knew that STARBUCKS would use the hot beverage container system to deliver hot beverage products of varying temperatures ranging from 120 degrees F. to more than 200 degrees F. if a tea beverage was being delivered. The Defendants designed and sold the beverage containers as a part of STARBUCKS' finished product, with full knowledge that STARBUCKS intended to, and did, serve hot tea products to customers with one or more tea bag strings draped over the cup lip when the cup was being lidded by a STARBUCKS associate or barista.

49.    Upon information and belief, through the use and foreseeable misuse experience of STARBUCKS employees, STARBUCKS customers and product

researchers, STARBUCKS and the component manufacturers learned that the tea bag strings wick hot liquid through the string, through the cup/lip seal, and out of the cup. STARBUCKS tea drinks would drip such that the tea tag (at the end of the tea string) would sometimes be tucked into the cup sleeve by associates to reduce the flow of hot tea liquid from the tea lid and onto customers' hands.

50.    Upon information and belief, the tea bag strings in their dry state, and to a greater extent in their wet and swollen state, interfered with the lip/cup seal of the hot beverage container by either preventing the seal as an obstruction (especially when the two strings were wound together), or acting to deform the heated and pliable lid in two places so that a seal would not occur (especially where the strings were lain over two different areas of the lip. When combined with foreseeable cup deflection from associate grasping and handling the hot tea beverage prior to delivery to the customer, the lack of the lip/cup seal made the lid unstable and not affixed to the cup as originally designed and expected for non-tea hot beverage products.

51.    STARBUCKS had notice prior to the present matter of the consequences of serving the hotter double tea beverages with tea bag strings in the same container system STARBUCKS used for serving the less hot beverages without lid seating obstructions – cup and lid deformation resulting in "lid-off" spill accidents during handling.

52.    The design of the component parts of the STARBUCKS dual tea beverage container system, and the design of the finished dual tea product as a

whole, was defective in that the benefits of the design were outweighed by the risks presented by the design in consideration of the gravity and likeliness of the potential harm resulting from foreseeable use or misuse; the cost and feasibility of a safer, alternative design; and in consideration of the disadvantages of an alternative safer design.

53.    Defendants' respective designs were a substantial factor in causing harm to the Plaintiffs.

54.    Upon information and belief, Defendants had knowledge of no less than Eighty (80) lid-off incidents per day involving customers; Defendants had knowledge of additional complaints and burn incidents from employees, managers and associates concerning defective cups and lids; Defendants had knowledge of the defective lids and lid fit issues involving double tea beverages with sufficient notice to create an alternative safe design, reduce defective lid production and/or to deploy procedural practice change prior to the present incident.  Accordingly, the conduct of Defendants STARBUCKS and PACTIV in failing to research, analyze and deploy a reasonably safe alternative solution constituted despicable conduct carried on by the Defendants in conscious disregard of the rights and safety of the Plaintiffs. Accordingly, Plaintiffs and the State of California are entitled to an objectively reasonable award of exemplary damages against STARBUCKS and PACTIV to incentivize deployment of a safe solution, and to disincentivize further despicable conduct by making burn claims unaffordable as a cost of doing business.

STRICT PRODUCT LIABILITY

(Failure to Warn)

(Against All Defendants)

55.    Plaintiffs incorporate by this reference all preceding paragraphs as if fully set forth herein.

56.    Defendants designed, manufactured distributed and sold beverage container systems containing heated beverages (hereinafter referred to as the "PRODUCT") for the purchase and transport from their stores by ordinary consumers, the components of which included a paper-based cup with a lip, a plastic-based lid formed to create a seal with the cup lip, a paper-based sleeve designed to fit around the outside of the cup, but below the lid, and the heated liquid contents.

57.    Defendant STARBUCKS elected to deploy and furnish the PRODUCT to ordinary consumers for the purchase and transport from their stores of hot tea drinks, though the hot tea drinks were served to drive-through customers at materially higher temperatures than those experienced with coffee drinks. Upon information and belief, Defendant STARBUCKS notified Defendant PACTIV Corporation of the alternate use of the beverage container system for serving hot tea to drive-through customers at materially higher temperatures than those experienced with coffee drinks.

58.    The use of the beverage container system for double tea drinks was known or knowably dangerous to a reasonable store manager or STARBUCKS associate due to STARBUCKS associate experience, repeatedly-observed lid manufacturing defects, repeated "lid-off" incidents during the transfer of the beverage container system (especially when serving double tea drinks with tea strings and tea tags), or other observed factors.

59.     The potential risk and danger of scalding skin burn injuries due to lid-off incidents involving double-tea drinks was a known or knowable risk based upon the then available scientific and medical knowledge generally-accepted in the scientific community at the time the PRODUCT was manufactured, assembled and furnished to customers.

60.     The potential risk of the PRODUCT lid releasing scalding contents of the beverage involved a substantial danger when used or misused in a foreseeable manner by ordinary consumers.

61.     The ordinary consumer would not recognize the potential risk of the lid popping-off a STARBUCKS hot beverage because once those cups are lidded, the seal is ordinarily not subject to inadvertent displacement in normal handling.   The ordinary consumer would not recognize or expect defects in the lid seal during their experience, nor would they recognize the need to presume the lid was unstable due to obstruction by tea strings in the lid/cup seal.

62.     No Defendant adequately warned the Plaintiffs that the lids were defective and could displace and release scalding contents during normal handling; nor did any Defendant adequately warn that double-tea drinks served at scalding temperature were subject to displacement and release of scalding contents under normal handling conditions.

63.     Plaintiffs were harmed.

64.     Defendants' failure to adequately warn the Plaintiffs was a substantial factor in causing Plaintiffs' harm.

/ / /

## LOSS OF CONSORTIUM

### (Against All Defendants)

65.     Plaintiffs incorporate by this reference all preceding paragraphs as if fully set forth herein.

66.     Plaintiff LIUDMILA MAFTEY was at all times the legal spouse of Plaintiff TOMMY PILUYEV and was present in the front seat of the automobile when the lid came off the tea cup.  Plaintiff LIUDMILA MAFTEY observed the tea outside the cup and falling upon her husband, followed by his screams.  Plaintiff LIUDMILA MAFTEY she observed red marks on Mr. Piluyev's body where the tea had burned him.  Through days and nights at the hospital, Plaintiff LIUDMILA MAFTEY observed the painful dressing changes, the results of debridement and the painful removal of Mr. Piluyev's dead skin from the most intimate areas of his body.

67.     Plaintiff LIUDMILA MAFTEY became Mr. Piluyev's caretaker and assistant after Mr. Piluyev was released from the hospital.  Plaintiff LIUDMILA MAFTEY assisted Mr. Piluyev in his recovery and rehabilitation while also serving as the household's and the logistics business' sole support and coordinator.

68.     Plaintiff LIUDMILA MAFTEY was denied the care, comfort and society of her husband, in addition to his household services, while raising an infant of tender years in the wake of contemporaneously watching her husband burn in his car seat.  Plaintiff LIUDMILA MAFTEY suffered serious emotional distress as a result.

69.    Upon information and belief, Defendants had knowledge of no less than Eighty (80) lid-off incidents per day involving customers; Defendants had knowledge of additional complaints and burn incidents from employees, managers and associates concerning defective cups and lids; Defendants had knowledge of the defective lids and lid fit issues involving double tea beverages with sufficient notice to create an alternative safe design, reduce defective lid production and/or to deploy procedural practice change prior to the present incident.

70.    With the knowledge of prior incidents occurring daily with the hot teas, Defendants STARBUCKS and PACTIV acted or failed to act by failing to research, analyze and deploy a reasonably safe alternative solution. Defendants' acts or failures to act were an extreme departure from the ordinary standard of conduct such that their conduct arose to the level of gross negligence.

71.    Further, or alternatively, the conduct alleged above by Defendants STARBUCKS and PACTIV constituted despicable conduct carried on by the Defendants in conscious disregard of the rights and safety of the Plaintiffs. Accordingly, Plaintiffs and the State of California are entitled to an objectively reasonable award of exemplary damages against STARBUCKS and PACTIV to incentivize deployment of a safe solution, and to disincentivize further despicable conduct by making burn claims unaffordable as a cost of doing business.

## VICARIOUS LIABILITY
### (Against Defendant STARBUCKS)

72.     Plaintiffs incorporate by this reference all preceding paragraphs as if fully set forth herein.

73.     Plaintiffs were harmed by the mishandling of the hot teas by the female STARBUCKS associate, who was acting within the course and scope of her employment as a STARBUCKS associate at the time of delivering the second hot tea to Mr. Piluyev.  Either the STARBUCKS associate did not adequately seal the hot tea lid to the lip of the cup before she transferred the hot tea to Mr. Piluyev, or the lid was broken or otherwise patently defective to the STARBUCKS associate when she lidded the cup which eventually failed and burned Mr. Piluyev.  The defect in the lid and/or the negligent preparation of the drink was not patently defective or even visible to Mr. Pile at the time the hot tea was prepared, or at the time of transfer.

IV.

PRAYER

74.     WHEREFORE, Plaintiffs pray for damages to be awarded as follows:

a.  General damages according to proof;

b.  Special damages according to proof and prejudgment interest at the legal rate pursuant to California Civil Code section 3287(a);

c.  Exemplary Damages;

Dated: September 9, 2020

By _____

WHITNEY A. DAVIS
420 Throckmorton Street,
Suite 200
Fort Worth, Texas 76102
. . .
641 Fulton Avenue, Suite 200,
Sacramento, CA 95825

Attorneys for Plaintiffs
TOMMY PILUYEV; LIUDMILA MAFTEY

## **DEMAND FOR TRIAL BY JURY**

Plaintiffs TOMMY PILUYEV and LIUDMILA MAFTEY hereby demand trial by jury.

Dated: September 9, 2020          WHITNEY A. DAVIS, ATTORNEY AT
                                  LAW

By _____

WHITNEY A. DAVIS
420 Throckmorton Street,
Suite 200
Fort Worth, Texas 76102
. . .
641 Fulton Avenue, Suite 200,
Sacramento, CA 95825

Attorneys for Plaintiffs
TOMMY PILUYEV; LIUDMILA MAFTEY